694 P.2d 521

**Lloyd MUCKEY, Appellant,**

v.

**NEW MEXICO DEPARTMENT OF HUMAN SERVICES, INCOME SUPPORT DIVISION, Appellee.**

**No. 7690.**

Court of Appeals of New Mexico.

Jan. 8, 1985.

Robert F. Sanchez, Las Vegas, Clark De Schweinitz, Northern New Mexico Legal Services, Inc., Santa Fe, for appellant.

Paul G. Bardacke, Atty. Gen., Corliss Thalley, Roger A. Wagman, Asst. Attys. Gen., Richard J. Rubin, Gen. Counsel, Santa Fe, for appellee.

## OPINION

MINZNER, Judge.

Appellant Lloyd Muckey, a recipient of Aid to Families with Dependent Children (AFDC) benefits, appeals a decision by the New Mexico Human Services Department (HSD) that affirmed county action terminating those benefits. We affirm.

In the summer of 1983 Muckey, on behalf of himself, his wife, and two children, began receiving financial and medical assistance in the amount of $281 monthly through the AFDC program. In August 1983, over a period of three days, the Muckeys received a number of unemployment compensation checks as a result of a successful appeal in another state. The Muckeys received no other income during August.

HSD considered the sum the Muckeys received a nonrecurring lump sum payment to which 1 HSD Income Support Division Program Manual (ISDP Manual), Section 221.832(A) (revised September 1, 1982) (the "lump sum rule") applied. As a result, HSD determined the family was ineligible for financial and medical assistance. Prior to that time, however, the Muckeys had expended much of the money on basic household expenses and to repay preexisting debts.

Muckey argues that HSD improperly applied the lump sum rule. His argument has several parts:

(1) whether the lump sum rule is unconstitutional;

(2) whether the money received constitutes "available" income under 45 C.F.R. Section 233.20(a)(3)(ii)(D) (1983);

(3) whether the lump sum rule applied when the Muckeys received no earned

income during the same month in which the lump sum was received;

(4) whether HSD is estopped from applying the lump sum rule due to inadequate information supplied by the agency; and

(5) whether an exception to ineligibility applies due to a life-threatening circumstance in the family unit.

The first, second, and third issues are related, because resolving them requires resort to legislative history. Therefore, we address these three issues together.

■■■ This court may set aside the decision of the administrative agency only if it is (1) arbitrary, capricious, or an abuse of discretion; (2) not supported by substantial evidence in the record as a whole; or (3) otherwise not in accordance with law. NMSA 1978, § 27–3–4(F) (Repl.Pamp.1984). In reviewing the agency's factual decisions, we must view the evidence in the light most favorable to the decision. *New Mexico Human Services Department v. Garcia*, 94 N.M. 175, 608 P.2d 151 (1980).

## I. THE APPLICABILITY OF THE LUMP SUM RULE

The Muckeys were receiving AFDC benefits under a joint federal-state program. *See* 42 U.S.C.A. §§ 601–615 (1983). Under the program, the state administers federal funds, and the state plan must comply with federal statutes and regulations. By providing the benefits, Congress intended to encourage the care of dependent children in their homes. The program furnishes financial assistance to needy, dependent children by making payments to a relative who cares for them. 42 U.S.C.A. § 601.

In 1981 Congress amended the provision primarily at issue in this case, 42 U.S.C.A. Section 602(a)(17), as part of a complex and extensive attempt to cut the federal budget. The amendment to Section 602(a)(17) created the lump sum rule, Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 2304, 95 Stat. 357, 845. The federal agency in charge of administering AFDC in turn published final regulations implementing the lump sum rule. *See* 45 C.F.R. § 233.20(a)(3)(ii)(D).

The amendment required that state AFDC plans incorporate the lump sum rule. The New Mexico version in force on the date of the hearing complied with the federal statute. It stated in pertinent part:

If the AFDC budget group or any other individual whose income is counted in determining the budget group's need receives, beginning with the month of application, a non-recurring [sic] lump sum payment which[,] together with all income for that month after allowable disregards[,] exceeds the Department's standard of need applicable to the family[,] such amount of income shall be considered income in the payment month and the family shall be ineligible for aid for the whole number of months that equals the sum of the non-recurring [sic] lump sum and all other income after allowable disregards received in such month divided by the standard of need applicable to such family (i.e.[,] the budget group plus any other individual whose lump sum income is considered in determining the period of ineligibility). Any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received, in the first month following the period of ineligibility determined under this Section.

ISDP Manual § 221.832(A), at 37.

In New Mexico and elsewhere, the rule provides, with certain exceptions, that the receipt of a lump sum disqualifies the recipient family from obtaining a like amount in federal aid. The disqualification persists for the period of time the lump sum would cover were it disbursed as monthly AFDC allotments. Thus, the caseworker, having divided the sum the Muckeys said they received by the monthly allotment, calculated that benefits would be suspended for nine months.

Muckey argues that the lump sum rule violates the due process clause because it conclusively presumes that the sum will be available for use by the family during the entire period of ineligibility. As we under-

stand the rule, however, it does not require continuing availability of the money. Apparently Congress had two purposes in enacting the present rule: "to promote responsible budgeting of lump-sum income by all AFDC families and to reduce AFDC disbursements by a specified amount based on calculations that had assumed application of the lump-sum rule to all AFDC families, not only to those AFDC families with earned income." *Sweeney v. Murray*, 732 F.2d 1022, 1027 (1st Cir.1984). Congress specifically noted that prior practice, under which AFDC payments resumed as soon as the lump sum was expended, had a "perverse effect," because it encouraged a family to spend a lump sum as quickly as possible. *Id.*

■ The purposes behind the present rule do not require continuing availability. The present rule does not create an unconstitutional presumption; rather, it limits the availability of scarce resources. *Cf. National Potash Co. v. Property Tax Division of Taxation & Revenue Department*, 101 N.M. 404, 683 P.2d 521 (Ct.App.1984) (method of taxation held not to establish an irrebuttable presumption). Congress in effect restricted AFDC benefits. As an economy measure, Congress provided that certain nonrecurring payments would be treated as income for a set period of time. *See* 45 C.F.R. § 233.20(a)(3)(ii)(D). *See generally Walker v. Adams*, 741 F.2d 116 (6th Cir.1984); *Clark v. Harder*, 577 F.Supp. 1085 (D.Kan.1983). The government has no constitutional obligation to provide even a minimum level of support. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ Muckey also argues that the lump sum rule conclusively presumes that the needs and composition of the household, as well as the standard of need established by HSD, will remain unchanged during the period of ineligibility. Muckey, however, demonstrated no change in either condition at the time of the hearing. Under these circumstances, we will not address this issue. *See Advance Loan Co. v. Kovach*, 79 N.M. 509, 445 P.2d 386 (1968).

■ Muckey also argues that because the lump sum had been spent, it could not be used to meet the family's needs and, thus, could not be a basis for terminating AFDC payments. *See Cruz v. New Mexico Department of Human Services, Income Support Division*, 100 N.M. 133, 666 P.2d 1280 (Ct.App.1983). In computing the need of a dependent child, HSD must consider the resources and income of the household. 42 U.S.C.A. § 602(a)(7)(A). The "income and resources are considered available * * when *actually* available * * *." 45 C.F.R. § 233.20(a)(3)(ii)(D) (emphasis added). Resources or income to which the child has no actual access will not be considered available under Section 602(a)(7)(A). *See Green v. Barnes*, 485 F.2d 242 (10th Cir.1973) (value of property considered an available resource only to the extent of equity therein). *See also National Welfare Rights Organization v. Weinberger*, 377 F.Supp. 861 (D.C.1974) (finding a regulation designed to recoup welfare overpayments not authority to recover overpayments that had already been spent).

The record is incomplete regarding the exact amount received. The HSD decision states that "[t]he amount of benefits received from unemployment compensation is uncertain." Given the record before us, we cannot be sure how much income was available at the .date of the hearing or would be available in the future.

■ No cases have addressed directly the relationship between the present lump sum rule and other provisions requiring that resources be available. The legislative history of the lump sum rule indicates that the rule represents something of an exception to the general principle stated in Section 602(a)(7)(A). The lump sum rule was enacted in order to encourage families to budget such income, *and* to wisely allocate scarce fiscal resources. *Sweeney v. Murray*. The regulations in effect on the date of the hearing permitted a change in the ineligibility period only for a life-threatening circumstance. 45 C.F.R. § 233.-20(a)(3)(ii)(D); ISDP Manual. § 221.832(A).

This interpretation indicates the agency did not consider continued availability a prerequisite. The agency's interpretation is entitled to deference. *See Jacquet v. Westerfield,* 569 F.2d 1339 (5th Cir.1978).

■ In this case, money was actually received, available, and some of it was spent on behalf of the family unit. Further, the record indicates that more was received in a subsequent month. Under these circumstances, we cannot find as a matter of law that the application of the rule by HSD was arbitrary, capricious, unreasonable, or otherwise not in accordance with law. We note that the exact period of ineligibility has not yet been determined.

Muckey has argued, finally, that the lump sum rule does not apply because the Muckeys received no earned income during the month in which the lump sum was received. The relevant passage appears in 42 U.S.C.A. Section 602(a)(17), which refers to persons "specified in paragraph 8(A)(i) or (ii)" of 42 U.S.C.A. § 602(a). Paragraphs (8)(A)(i) and (ii) refer to certain individuals and require that their "earned income" be disregarded. Muckey argues that by the terms of the statute the lump sum rule applies only to persons with earned income. The issue has been extensively litigated recently. *See Sweeney v. Murray,* 732 F.2d at 1024, n. 2 (noting that such challenges have been filed in more than twenty-five district courts).

HSD contends that the reference to Section 602(a)(8)(A)(i) and (ii), rather than restricting the lump sum rule to recipients with earned income, directs the states to include allowable earned income, if any, with the lump sum when computing the term of ineligibility. To date, three federal courts of review, as well as a number of federal district courts and state courts, support this view. *See Walker v. Adams; Faught v. Heckler,* 736 F.2d 1235 (8th Cir. 1984); *Sweeney v. Murray; Reed v. Lukhard,* 591 F.Supp. 1247 (W.D.Va.1984); *Bowmaster v. Petit,* 576 F.Supp. 354 (D.Me.1983); *Clark v. Harder; Duckworth v. Miller,* 127 Ill.App.3d 1088, 83 Ill.Dec. 214, 469 N.E.2d 1148 (1984); *Littlefield v.*

*State Department of Human Services,* 480 A.2d 731 (Me.1984). We are in agreement with the more recent cases.

■ The majority of jurisdictions have found, and HSD concedes, that the statutory language is ambiguous. When the language of the statute is ambiguous, recourse to legislative history is appropriate. *See Duckworth v. Miller.* The *Sweeney* court observed that the legislative history of the lump sum rule is "as clear as its language is ambiguous." 732 F.2d at 1027. The legislative history supports the view that the lump sum rule was intended to apply universally, rather than exclusively, to those with earned income. *Id.*

Furthermore, Congress has now clarified by amendment the application of the Act. Congress in 1984 deleted "a person specified in paragraph 8(A)(i) or (ii)" in Section 602(a)(17) and substituted "a child or relative applying for or receiving aid to families with dependent children, or any other person whose need the State considers when determining the income of a family." Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2632(b)(1), 1984 U.S.Code Cong. & Ad.News (98 Stat.) 494, 1141. Regarding this recent amendment, Senator Dole stated in the Congressional Record, "That [former] provision has been interpreted by some courts to apply only to AFDC families having earned income at the time they receive a lump-sum payment. The amendment ... are [sic] intended to clarify that this provision was always intended to apply to all families, not just those with earned income." 130 Cong.Rec. S10644 (daily ed. August 10, 1984) (statement of Sen. Dole).

We hold the lump sum rule is applicable to all AFDC recipients, regardless of earned income. We do not reach the question of what payments should be denominated lump sum payments, because that issue has not been raised on appeal. The phrase requires interpretation. *Compare Reed v. Lukhard* (holding a personal injury award was not properly considered lump sum income) *and Littlefield v. State Department of Human Services* (tort claim

settlement properly deemed lump sum income, but some expenses deductible).

## II. WHETHER HSD IS ESTOPPED FROM APPLYING THE LUMP SUM RULE

 Muckey argues that payments to the family should not be terminated, because the caseworker failed to inform them that AFDC payments would be jeopardized by the receipt of a lump sum. Ordinarily we will not apply estoppel against the state. *See Peltz v. New Mexico Department of Health & Social Services,* 89 N.M. 276, 551 P.2d 100 (Ct.App.1976); *National Advertising Co. v. State ex rel. State Highway Commission,* 91 N.M. 191, 571 P.2d 1194 (1977). In the present case, even if the doctrine were available, it would not apply because the record does not show that the Muckeys spent their money in reliance on the conduct of HSD. *See Westerman v. City of Carlsbad,* 55 N.M. 550, 237 P.2d 356 (1951).

## III. DOES AN EXCEPTION TO THE LUMP SUM RULE APPLY DUE TO A LIFE–THREATENING CIRCUMSTANCE IN THE FAMILY UNIT?

The regulation in existence on the date of the hearing provided that the period of ineligibility may be shortened when (1) a life-threatening circumstance, including a medical emergency, exists, and (2) the lump sum money has been or will be spent in connection with that emergency. *See* 45 C.F.R. § 233.20(a)(3)(ii)(D). The parties argue that the New Mexico regulation in effect on the date of the hearing was consistent with the existing federal regulation. The regulation has been amended since the date of the hearing and now details other circumstances under which the period of ineligibility may be shortened. *See* ISDP Manual § 221.832(A) (revised October 1, 1984). *See also* Deficit Reduction Act of 1984, § 2632(a).

 Muckey submitted into evidence a letter from Dr. Kaczmarek. The letter indicates that Mrs. Muckey has an abdominal lesion which may now be or may become cancerous and which should be excised "as soon as possible." The record also shows evidence, however, that would contradict the presence of a medical emergency. Mrs. Muckey had had the same condition for ten years. Furthermore, another medical report noted the lesion, but did not indicate the presence of an emergency. Viewing the record as a whole and in the light most favorable to the decision, there is substantial evidence to support the determination that no medical emergency existed. *New Mexico Department of Human Services, Income Support Division v. Tapia,* 97 N.M. 632, 642 P.2d 1091 (1982).

In addition, the record demonstrated that the lump sum was not expended for medical treatment. The second requirement was not met. The record contains substantial evidence that the medical exception did not apply.

## CONCLUSION

The final HSD decision did find on the basis of the record that other legitimate life-threatening circumstances may exist and should be explored. If these circumstances satisfy the regulation, they will have the effect of shortening the period of ineligibility. Our decision to uphold the agency's action does not preclude such a determination.

The final decision expressly states that the period of ineligibility was not determined. First, the amount received was uncertain. Second, the money the Muckeys borrowed was never considered in determining their grant. We observe, further, that the record indicates some of the sums may have been received prior to August. If so, the period of ineligibility may have been miscalculated originally.

We affirm the decision by HSD, but nothing in this opinion is intended to preclude a reevaluation of the period of ineligibility. The decision we affirm indicates that the period was subject to revision.

IT IS SO ORDERED.

WOOD and BIVINS, JJ., concur.