**ROOT OUTDOOR ADVERTISING, INC.,** Gardner Signs, Inc.; James H. Trujillo: Beverly Faye Trujillo; Paul D. Hendrickson; Gary Duncan and Ron Montross, d/b/a D.M.H. Enterprises, a Partnership; and Thelma L. Walker, Plaintiffs–Appellees,

**and**

Colorado Department of Highways, Plaintiff–Intervenor–Appellee,

**v.**

**CITY OF FORT COLLINS, Colorado, a** Municipal Corporation, Defendant–Appellant.

No. 85CA1454.

Colorado Court of Appeals, Div. II.

June 23, 1988.

Rehearing Denied Aug. 11, 1988.

Wood, Herzog, Osborn & Bloom, P.C., David L. Wood, Fort Collins, for plaintiffs-appellees.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., William Bassett, Asst. Atty. Gen., Denver, for plaintiff-intervenor-appellee.

Anderson, Sommermeyer, Wick & Dow, Timothy J. Dow, Fort Collins, for defendant-appellant.

SMITH, Judge.

The City of Fort Collins (City) appeals a declaratory judgment holding that in order for it to require plaintiffs to remove their signs pursuant to its local ordinances it must pay just compensation as that concept is dealt with in condemnation, and that it should follow the procedures outlined in the eminent domain statutes in order to accomplish such removal. More specifically, the trial court held that the City's Sign Code which allowed plaintiffs a five-year "Amortization Period" to remove their nonconforming signs did not satisfy the just compensation requirement of the Colorado Outdoor Advertising Act, § 43–1–401, et seq., C.R.S. (1984 Repl.Vol. 17). We affirm.

The parties stipulated to the following facts. Prior to enactment of the City's ordinance, plaintiffs had erected, and were maintaining, "off-premises" signs located within 660 feet of the state highway system within commercial and industrial zoned areas of Fort Collins. After passage of the Sign Code which required removal or modification of such signs, and which contained the five-year "Amortization Period," City directed that plaintiffs either remove or modify their signs to bring them into conformity with the code.

### I.

City first argues that its sign code is a zoning matter of purely local concern, especially since City is a home-rule municipality. Thus, it argues that in the exercise of its police power it could legally require plaintiffs to bring the signs into conformity with its code or to remove them after expiration of the five year amortization period without any obligation to compensate plaintiffs. We disagree.

■ The question of the validity of a zoning regulation is a matter of law. *Veterans of Foreign Wars v. City of Steamboat Springs*, 195 Colo. 44, 575 P.2d 835 (1978), *cert. dismissed*, 439 U.S. 809, 58 L.Ed.2d 101, 99 S.Ct. 66 (1978). While provisions of the Colorado Constitution establish exclusive home-rule authority over matters of local concern, statutes which deal with matters of state-wide concern operate to the exclusion of conflicting local ordinances. *Century Electric Service & Repair, Inc. v. Stone*, 193 Colo. 181, 564 P.2d 953 (1977). Similarly, in matters of mixed local and statewide concern, a charter or ordinance provision of a home-rule municipality may coexist with a state statute as long as there is no conflict; but in the event of conflict, the state statute supersedes the conflicting provision of the charter or ordinance. *National Advertising Co. v. Department of Highways*, 751 P.2d 632 (Colo.1988).

■ Our supreme court has recently held that the control of outdoor advertising devices within a home-rule municipality along roads of the state highway system is a matter of mixed statewide and local concern. *National Advertising Co. v. Department of Highways, supra.* Thus, City's ordinance is invalid to the extent it may conflict with provisions of the Colorado "Outdoor Advertising Act," § 43–1–401, et seq., C.R.S. (1984 Repl.Vol. 17). The case of *Major Media of the Southeast, Inc. v. City of Raleigh*, 792 F.2d 1269 (4th Cir. 1986), cited by City, is inapposite here.

### II.

One of the primary purposes of the "Outdoor Advertising Act" is to make certain

that Colorado receives its full share of federal highway funds. *National Advertising Co. v. Department of Highways, supra; Orsinger Outdoor Advertising, Inc. v. Department of Highways*, 752 P.2d 55 (Colo.1988).

In light of Colorado's significant interest in maintaining eligibility for federal highway funds, § 43–1–416, C.R.S. (1984 Repl. Vol. 17) has been construed as an authorization to a municipality to establish "local controls" for outdoor advertising devices along the state highway system which are no less restrictive than controls set forth in the Outdoor Advertising Act or regulations promulgated, so long as such "local controls" do not jeopardize Colorado's eligibility for highway funds. *National Advertising Co. v. Department of Highways, supra*. Stricter limits or controls on advertising devices may be imposed by a municipality within its boundaries only so long as such limitations or controls do not jeopardize the receipt by the state of its full share of federal highway funds, § 43–1–416, C.R.S. (1984 Repl.Vol. 17), and so long as such controls comply with the Federal Highway Beautification Act of 1965, 23 U.S.C. § 131 (1982). Section 43–1–402(1)(b), C.R.S. (1984 Repl.Vol. 17).

The Outdoor Advertising Act requires that "[j]ust compensation *shall* be paid" (emphasis added) for the taking from an owner of such advertising device, of the right, title, leasehold, and interest in such device, or of the right to maintain such advertising device. Section 43–1–414(2), C.R.S. (1984 Repl.Vol. 17). This requirement is consistent with the mandate in the Federal Highway Beautification Act, 23 U.S.C. § 131(g) (1982) which requires that just compensation be paid *whether or not a sign is removed pursuant to the federal act*. This requirement of the Federal Highway Beautification Act was the result of a 1978 amendment, which reemphasized the intent to pay just compensation to all owners of signs removed in order to protect the public investment in highways, to promote the safety and recreational value of public travelers, and to preserve natural beauty. *See generally Metromedia, Inc. v. City of San Diego*, 26 Cal.3d 848, 164 Cal.Reptr.

510, 610 P.2d 407 (1980), *rev'd on other grounds*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *see also State of Vermont v. Brinegar*, 379 F.Supp. 606 (D.C. Vt.1974) Such payment is mandatory and a prerequisite to the "effective control" required by the Federal Highway Beautification Act of each state's outdoor advertising. *State of Vermont v. Brinegar, supra*.

Seventy-five percent of the required compensation is allocated to the states by the federal government. 23 U.S.C. § 131(g). Consequently, the Outdoor Advertising Act expressly prohibits enforcement of the required removal of an advertising device until the federal share of the requisite compensation becomes available to the state. Section 43–1–414(3), C.R.S. (1984 Repl.Vol. 17). Our General Assembly was cognizant of the economic impact which would result from implementation of the restrictions of the act, both at the state and local level. Thus, the act mandates that local municipalities allow nonconforming signs to remain until the applicable portion of the compensation is received from the federal government.

### III.

■ The central issue in this case is whether the "amortization schedule" method provided by the City, which allows only five years to remove an offending sign, satisfies the requirement that just compensation be paid to an owner who is required by local ordinance to remove a previously conforming sign which now violates the ordinance. The trial court held that amortization may under particular circumstances be equated with just compensation but in other cases might equate to only a small portion, if any, of "just compensation." We disagree and conclude that, under both the federal and state acts, the allowing of an "amortization period" does not constitute "paying just compensation" in any case.

### A.

City relies on the case of *Ackerley Communications, Inc. v. City of Seattle*, 92

Wash.2d 905, 602 P.2d 1177 (1979), in arguing that the Outdoor Advertising Act is not preempted by the Federal Highway Beautification Act because the federal act does not require that just compensation be paid for removal of those signs located in commercial and industrial zoned areas. We disagree.

We adopt and agree with the reasoning of the California court which has addressed this precise issue in *Metromedia, Inc. v. City of San Diego, supra.* Moreover, we conclude that the General Assembly's express legislative intent to insure that Colorado receive its full share of funds apportioned by Congress for expenditures for federal highways mandates strict compliance with the literal language of both the state and federal acts. This is consistent with previous decisions in which we have held that the constitutional guaranty that private property not be taken without just compensation must be liberally construed. *See Srb v. Board of County Commissioners,* 43 Colo.App. 14, 601 P.2d 1082 (1979).

### B.

Citing *City of Fayetteville v. McIlroy Bank & Trust Co.,* 278 Ark. 500, 647 S.W.2d 439 (1983), and *Art Neon Co. v. City & County of Denver,* 488 F.2d 118 (10th Cir. 1973), the City argues that amortization of billboards has been recognized as a legitimate exercise of police power, and contends that amortization is a constitutional alternative to the payment of compensation. We disagree.

■ When construing a statute, the statute must be read and considered as a whole, *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972) and meaning must be given to each word, phrase, clause, sentence, and section. *Blue River Defense Committee v. Town of Silverthorne,* 33 Colo.App. 10, 516 P.2d 452 (1973). The Outdoor Advertising Act allows municipalities to exercise local police powers as long as such exercise does not jeopardize receipt of federal funds, § 43–1–416, C.R.S. (1984 Repl. Vol. 17), or conflict with the statewide interest and legislative intent to comply with the Federal Highway Beautification Act.

Sections 43–1–402(1)(a) and (1)(b), C.R.S. (1984 Repl.Vol. 17).

*City of Fayetteville v. McIlroy Bank & Trust Co., supra,* is not dispositive of the issue here since the state of Arkansas does not appear to have a state statute which supersedes the local ordinance. *Art Neon Co. v. City & County of Denver, supra,* is also inapposite. It was decided prior to the repeal and reenactment of the Act in 1981, at which time our General Assembly expressly set forth the statewide application of the Outdoor Advertising Act. It also predated our supreme court's announcements in *National Advertising Co. v. Department of Highways, supra,* and *Orsinger Outdoor Advertising, Inc. v. Department of Highways, supra.*

Furthermore, in *Art Neon Co. v. City & County of Denver, supra,* the court conceded that in testing the reasonableness of a plan for termination, it was not testing the concept of "just compensation." Moreover, it recognized that "amortization" is in reality no more than notice to an owner or user of a sign that they have a period of time to make whatever adjustments or arrangements they can. The term contains no connotation of compensation or a requirement therefor. *Art Neon Co. v. City & County of Denver, supra.*

The New Mexico Supreme Court holding in *Battaglini v. Town of Red River,* 100 N.M. 287, 669 P.2d 1082 (1983) is persuasive. It analyzed provisions of an outdoor advertising statute which is substantially similar to the provisions of our act. That act provides:

"No municipal, county or local zoning authority or any other political subdivision of the state shall remove or cause to be removed any lawfully erected and maintained advertising structure without paying just compensation." N.M. *Stat. Ann.* § 42A–1–34 1978 (Repl.Pam.1981)."

In interpreting the statute, the New Mexico court, concluded that, despite prior judicial holdings that reasonable amortization periods may be a constitutional means for municipalities to terminate nonconforming uses and can be constitutional alternatives to just compensation, the granting of an

amortization period *does not* constitute "paying just compensation," when such is expressly required by statute. It considered and rejected the reasoning of the Arkansas case, *City of Fayetteville v. McIlroy Bank and Trust Co., supra.*

We likewise conclude that the granting of an amortization period does not constitute paying the just compensation required by the Outdoor Advertising Act. Our act requires that no advertising device shall be required to be removed until federal compensation is available. Section 43-1-414(3), C.R.S. (1984 Repl.Vol. 17). Just compensation must be paid for each lawfully permitted nonconforming device. Section 43-1-414(2), C.R.S. (1987 Cum.Supp.). Since these signs were in existence prior to enactment of the City's code they were lawfully permitted. *See City of Salinas v. Ryan Outdoor Advertising, Inc.,* 189 Cal. App.3d 416, 234 Cal.Rptr. 619 (1987); *see also Metromedia Inc. v. City of San Diego, supra.*

Just compensation is required by the Federal Highway Beautification Act even if a nonconforming sign is removed because of local law. City's argument that it is not responsible to pay such compensation has merit only to the extent that the federal share is seventy-five percent. However, City may not require removal of the nonconforming signs until the federal share of the compensation required to be paid upon acquisition of such device becomes available to the state and can then be paid over to the owner or user of a sign.

Similarly, a California appellate decision recently focused on the requirement of its outdoor advertising act that requires compensation for the removal of certain billboards as required by the Federal Highway Beautification Act. As a result, it reversed a judgment that had ordered the removal without just compensation of a nonconforming sign located near a federal highway after passage of a five-year amortization period afforded by the local ordinance. *City of Salinas v. Ryan Outdoor Advertising, Inc., supra.*

### C.

█ City requests that we reverse the trial court's order which requires City to seek removal of the nonconforming signs by eminent domain proceedings. However, contrary to City's assertion, eminent domain proceedings are the only statutorily permitted method for removal of nonconforming signs other than acquisition by gift, purchase, agreement, or exchange. Section 43-1-414(2), C.R.S. (1984 Repl.Vol. 17). City cites no authority for a contrary conclusion.

### D.

Fairness and economic reality require that a condemning authority should be subject to the same burdens and benefits as a private party, and its liability for the market value of the right or interest taken should be no less than that of a private party in a theoretical workplace. *LaPlata Electric Ass'n v. Cummins,* 728 P.2d 696 (Colo.1986).

Just compensation is the full monetary equivalent of the property taken, *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970), paid contemporaneously with the taking. *Phelps v. United States,* 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083 (1927). Our supreme court has recognized a variety of approaches which are available to the trial court to be used to arrive at the value of property condemned. *See Herring v. Platte River Power Authority,* 728 P.2d 709 (Colo.1986); *see also Denver Urban Renewal Authority v. Berglund-Cherne Co.,* 193 Colo. 562, 568 P.2d 478 (1977).

### IV.

We need not address City's arguments that plaintiffs failed to exhaust their administrative remedies. This defense was waived by the stipulation of facts. We also find City's argument that plaintiffs failed to show they could not cause their signs to conform to be precluded by the stipulation not to raise the defense of failure to mitigate. Moreover, City's contention that plaintiff could conform their signs begs the real issue of whether or not "amortization"

satisfies the just compensation requirement.

Finally, so long as federal funds are available, and since the record does not indicate that the federal government would not provide the needed funds, we disagree with City's argument that there is a substantial issue to be addressed under the Tenth Amendment. *Metromedia Inc. v. City of San Diego, supra.* Furthermore, such an argument, when addressed, has not prevailed. *See State of Vermont v. Brinegar, supra.*

Accordingly, the judgment of the trial court is affirmed.

KELLY, C.J., and VAN CISE, J., concur.